IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH R.,[1] | ) |
|     Plaintiff, | ) ) ) No. 20 C 4853 |
| v. | ) ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) Maria Valdez ) ) |
|     Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Supplemental Security Income ("SSI") to Plaintiff Keith R. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary remand [Doc. No. 21] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 26] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

Plaintiff is an individual who received SSI benefits as a child, having been found disabled by an ALJ in 2006 due to borderline intellectual functioning and attention deficit hyperactivity disorder. As required by law, Plaintiff's eligibility for disability benefits was redetermined under the rules for determining disability in adults when Plaintiff attained age 18. On July 26, 2017, it was determined that Plaintiff was no longer disabled as of July 1, 2017. That determination was upheld upon reconsideration after a disability hearing held by a State agency Disability Hearing Officer. Thereafter, Plaintiff filed a written request for a hearing.

Two separate hearings before an Administrative Law Judge ("ALJ") were held on January 17, 2019 and September 5, 2019. Plaintiff personally appeared and testified at the hearings. Impartial medical experts, vocational experts, and Plaintiff's mother also appeared and testified at both hearings. Plaintiff waived representation for the January 17, 2019 hearing, but was represented by counsel at the September 5, 2019 hearing. In light of medical expert testimony at the January 17, 2019 hearing, the ALJ had sent Plaintiff for a mental consultative evaluation. However, at the September 5, 2019 hearing, Plaintiff's representative stated that they had not received any letter from Plaintiff's doctor.

On October 1, 2019, the ALJ denied SSI benefits to Plaintiff, determining that Plaintiff was no longer disabled under the Social Security Act as of July 1, 2017. The Social Security Administration Appeals Council then denied Plaintiff's

2

request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's eligibility for benefits was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ first noted that Plaintiff attained age 18 on November 15, 2016, and that he had previously been found to be no longer disabled as of July 1, 2017, based on a redetermination of disability under the rules for adults who file new disability applications. At step two, the ALJ concluded that Plaintiff has the following severe impairments: obesity; schizoaffective disorder; and attention deficit hyperactivity disorder (ADHD). The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that, since July 1, 2017, Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: can perform simple routine tasks requiring no more than short simple instructions and simple work-related decision-making with few workplace changes; can maintain occasional contact with the general public of a brief, superficial, and incidental nature and have occasional interaction with supervisors and co-workers; and can work in proximity to others, but with no

3

shared or tandem tasks. At step four, the ALJ determined that Plaintiff had no past relevant work.

At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that, since July 1, 2017, Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is no longer disabled under the Social Security Act.

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three,

4

precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also*

5

*Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir.

6

1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ ignored certain impairments and reached an incomplete RFC assessment; (2) the ALJ improperly discounted a consultative examiner's opinion and lacked an evidentiary basis for her assessment concerning the period from November 2017 onward; and (3) the ALJ improperly discounted Plaintiff's subjective symptoms. Each argument will be addressed below in turn.

#### A. The ALJ's Consideration of Plaintiff's Impairments

As stated above, the ALJ found that Plaintiff has severe impairments of obesity, schizoaffective disorder, and ADHD. Plaintiff first argues that the ALJ did not adequately address his diagnoses of borderline intellectual functioning, personality disorder, and oppositional defiant disorder. According to Plaintiff, the ALJ did not properly consider whether those diagnoses constituted severe impairments. However, "[d]eciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citation omitted). Accordingly, "any error at Step Two is harmless if the ALJ finds a claimant has *any* severe impairments and goes on to sufficiently address the aggregate effect of all the claimant's severe

7

and non-severe impairments later in his analysis." *Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 U.S. Dist. LEXIS 91276, at *5 (N.D. Ill. May 31, 2019) (citations omitted). Here, despite not finding them to be severe impairments, the ALJ's RFC analysis does in fact discuss Plaintiff's diagnoses of borderline intellectual functioning, personality disorder, and oppositional defiant disorder. (R. 21-23.)

Moreover, the Seventh Circuit has explained that "having been diagnosed with . . . impairments does not mean they imposed particular restrictions on [a claimant's] ability to work." *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) (citation omitted). Accordingly, it is a claimant's "burden to establish not just the existence of the condition, but to provide evidence that they support specific limitations affecting her capacity to work." *Id.* at 579 (citations omitted). Under this legal framework, Plaintiff's broad assertion that Plaintiff's "personality disorder results in greater limitations than the ALJ included in her RFC" is insufficient. (Pl.'s Memo. at 9.) Furthermore, as Defendant points out, Plaintiff "fails to identify any additional specific functional limitations caused by the diagnoses" and "does not attempt to argue how these diagnoses impacted him differently, if [at] all, than schizoaffective disorder or attention deficit hyperactivity disorder." (Def.'s Memo. at 3-4.) Though, for the first time in his reply brief, Plaintiff vaguely implies that the aforementioned diagnoses may impact Plaintiff's asserted need for repeated instructions, Plaintiff does not specifically tie that limitation to his diagnoses. Ultimately, the Court agrees with Defendant that Plaintiff's "reliance on diagnoses alone fails to show prejudicial error with either the ALJ's step two or

8

RFC determinations." (*Id.* at 4.) *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) ("But pointing to various diagnoses and complaints and saying that they might hinder [the claimant] is insufficient to establish the existence of a functional limitation.") (citation omitted).

### B. The ALJ's Treatment of Dr. Karr's Opinions

Plaintiff next maintains that the ALJ did not properly evaluate consultative examiner Dr. Jeffrey Karr's findings that Plaintiff "had 'marked' restriction[s] in interacting appropriately with the public, supervisors, and co-workers and in responding appropriately to usual work situations and changes in a routine work setting." (Pl.'s Memo. at 10.) In her decision, the ALJ assessed Dr. Karr's opinions as follows:

> After performing a mental consultative evaluation of the claimant in February 2019, Dr. Karr indicated he was uncertain as to the claimant's functional ability as the claimant exhibited highly questionable effort during the consultative evaluation. Dr. Karr did indicate the claimant had marked limitation [in] interacting appropriately with others and responding appropriately to usual work situations and changes in a routine work setting due to his significant school suspension history as well as a legal history, and that he presented uncooperative. I give great weight to the opinion of Dr. Karr that the claimant's functional ability based on findings during this evaluation could not be properly determined due to highly questionable effort. I give less weight to the opinion of Dr. Karr that the claimant has marked limitation in social interaction, as the evidence of record only supports at most a moderate limitation with social interaction as also opined by Drs. Taylor and Cremerius.

(R. 23-24 (citation omitted).)

An ALJ "is required to consider a consultative examiner's opinion and explain the weight given to such an opinion in his decision." *Lucio v. Barnhart*, No. 03 C 7078, 2004 U.S. Dist. LEXIS 12207, at *38 (N.D. Ill. June 22, 2004) (citation

9

omitted). However, "[a]n ALJ may discount the opinion of a consultative examiner . . . as long as he provides good reasons for doing so." *Johnny T. Saul*, No. 17 C 8671, 2020 U.S. Dist. LEXIS 3387, at *13 (N.D. Ill. Jan. 9, 2020) (citation omitted). Further, "[a]n ALJ can give less weight to a [consultative] doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight." *Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012) (citations omitted). Here, per the above-quoted passage, the ALJ explained the weight she gave to Dr. Karr's opinions and articulated good reasons for finding some of those opinions unpersuasive. Indeed, the ALJ elsewhere found persuasive the opinion of State agency consultant Dr. Russell Taylor's opinion that Plaintiff had only moderate restrictions with interacting with others and could interact with others sufficiently in a work setting with reduced social demands. (R. 22-23.) The ALJ also found persuasive the opinion of State agency consultant Dr. Leslie Fyans' opinion that Plaintiff had only mild restrictions with interacting with others. (*Id.* at 23.) Additionally, the ALJ gave some weight to the opinion of impartial medical expert Dr. Michael Cremerius' opinion that Plaintiff had moderate restrictions with interacting with others. (*Id.*) The ALJ was entitled to rely on the expertise of three doctors in finding that Plaintiff had at most moderate restrictions with interacting with others. *See Minnis v. Sec'y of HHS*, No. 91 C 4399, 1992 U.S. Dist. LEXIS 5491, at *16 (N.D. Ill. Apr. 8, 1992) ("[T]he testimony of the three doctors . . . constitutes substantial evidence to support the ALJ's decision."). Accordingly, the

10

Court rejects Plaintiff's arguments concerning the ALJ's treatment of Dr. Karr's opinions.³

Mixed in with his argument concerning Dr. Karr, Plaintiff asserts that the ALJ erred in rendering an RFC determination for the period of November 2017 through the date of the decision because she did not rely on a medical opinion that addressed that period. However, as an initial matter, the necessity of medical opinions is a matter subject to the ALJ's discretion. *See Jesus P. v. Saul*, No. 19 C 2271, 2020 U.S. Dist. LEXIS 105788, at *33 (N.D. Ill. June 17, 2020) ("An ALJ's retention of a medical expert is discretionary and 'there is no requirement that ALJs contact all treating physicians for disability opinions.'") (citations omitted). Further, the job of assessing a claimant's work-related abilities lies solely with the ALJ, not a medical expert. *See Thomas v. Colvin*, 745 F. 3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is matter for the ALJ alone – not a treating or examining doctor – to decide.") (citation omitted). Moreover, the Seventh Circuit has made clear that "[t]he claimant bears the burden of producing medical evidence that supports her claims of disability." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011)

---

³ Plaintiff argues in passing that "if the ALJ believed that Dr. Karr was uncertain about any of his conclusions, that was not sufficient reason to reject them [and] the ALJ should have contacted Dr. Karr for clarification." (Pl.'s Memo. at 11.) "But the ALJ was only required to recontact a medical source . . . if the evidence received is inadequate to determine whether the claimant is disabled." *Vincent A. v. Berryhill*, No. 16 C 7136, 2019 U.S. Dist. LEXIS 80484, at *16 (N.D. Ill. May 13, 2019) (citation and internal quotations omitted). The Court agrees with Defendant that that was not the case here, where the ALJ relied on other evidence, including multiple medical opinions and routinely normal mental status examination findings.

11

("The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity.") (citations omitted). Plaintiff's argument concerning the lack of medical opinions must fail because Plaintiff himself did not offer the medical opinions he now claims were lacking. *See Charles F. v. Saul*, No. 18 C 618, 2019 U.S. Dist. LEXIS 134940, at *15 (N.D. Ill. Aug. 12, 2019) ("[The claimant] contends that the treating doctor's opinion would be 'valuable information' to support his claim. Therefore, the burden was on [the claimant] to supply an opinion from Dr. Vermillion."). For these reasons, the Court must reject Plaintiff's argument concerning the ALJ's RFC determination for the period after November 2017.

        **C.**     **The ALJ's Assessment of Plaintiff's Subjective Symptoms**

For his final argument, Plaintiff contends that the ALJ's assessment of his reported symptoms was erroneous. Pertinent to Plaintiff's subjective symptoms, in her decision, the ALJ noted that: "[p]sychological evaluations in September and October 2017 noted the claimant was alert and cooperative with normal mood and affect along with normal attention span and concentration" (R. 21); "[i]n April 2018, . . . on psychiatric and mental status evaluation[s], he had all normal findings" (*id.*); "[o]n [a] mental status evaluation [in May 2018] he was oriented to time, place and person . . . [and] had normal fund of knowledge and had no depression, anxiety or agitation" (*id.*); "in June 2019 . . . [h]e had all normal findings on psychiatric and mental status evaluation[s]" (*id.* at 22); "in July 2019, he reported that his symptoms were better, he was sleeping better, he had no suicidal or homicidal

12

ideation, he denied hallucinations . . . [and] had all normal findings on psychiatric and mental status evaluation[s]" (*id.*); and "in August 2019 . . . he denied anxiety, behavioral problems, combative, compulsive behavior, depression, hyperactivity, inattentive[ness], obsessive behavior, paranoia, phobia, suicidal ideation and temper tantrums" (*id.*).

The ALJ concluded as follows regarding Plaintiff's subjective symptoms:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because medical records do not support his alleged impairments to the extent alleged with only routine and conservative treatment. In addition, Dr. Valette explained the inconsistencies in results at the various consultative examinations, which suggest the claimant was malingering. Furthermore, the limitations the claimant testified to having are inconsistent with records now at the hearing level and objective diagnostic tests and studies do not support his allegations. He had a FSIQ of 75 in school. Dr. Valette explained issues as to the validity of the IQ testing and the inconsistencies. The claimant's activities of daily living suggest the claimant has greater ability. He was working for his Uncle in March and April 2019 at a body shop earning $70.00 a week.

(R. 25.)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Under that standard, the Court finds that, per the ALJ's explanation and support outlined above, the ALJ reasonably determined that Plaintiff's subjective symptoms were not fully corroborated. *See Atkins v. Saul*, 814 F. App'x 150, 155 (7th Cir. 2020) ("Here, the ALJ otherwise explained his conclusion adequately. He explained that the objective

13

medical evidence and Atkins's daily activities did not corroborate his subjective symptoms.") (citations and internal quotations omitted); *Prill v. Kijakazi*, No. 21-1381, 2022 U.S. App. LEXIS 1072, at *23 (7th Cir. Jan. 13, 2022) ("Substantial evidence supports the ALJ's determination that Prill's account of her subjective symptoms was not consistent with her medical records."); *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). Ultimately, Plaintiff has not shown that the ALJ's evaluation of his alleged symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

14

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary remand [Doc. No. 21] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 26] is granted.

**SO ORDERED.**                                    **ENTERED:**

**DATE:**     **February 25, 2022**                     _____
                                                                        **HON. MARIA VALDEZ**
                                                                        **United States Magistrate Judge**